OPINION OF THE COURT
John M. Thomas, S.
This case is what appears to be the final chapter in Matter of Curry (143 Misc 2d 252) decided by this court on April 3, 1989. In that decision, the court, inter alla, determined that an automobile which the decedent gave to her brother, Edward Taylor, during her lifetime was a valid causa mortis gift *646 and therefore a testamentary substitute to be included in the calculation of the elective share of the surviving spouse pursuant to EPTL 5-1.1 (b) (1) (A).
Petition is now brought before this court by the surviving spouse, Elijah Curry, seeking the removal of the fiduciaries, Alberta Pearson and James Taylor, for their refusal to sign the amended account implementing the court’s decision and order and to pay a portion of the residuary estate to the surviving spouse. Additionally, the petition seeks a judgment against Edward Taylor, the recipient of the causa mortis gift, for his refusal to contribute pro rata to the surviving spouse’s elective share.
At a hearing before the court, the attorney for the estate testified that he had prepared an amended account pursuant to the terms of the court’s decision and order and submitted it to the two executors of the estate for their signature together with two checks: one for court-approved attorney’s fees, and the second for $1,000 for the setoff to the surviving spouse required by EPTL 5-3.1 (a) (5). Although the checks were returned signed, the executors refused to sign the amended account. The attorney for the estate also testifies that there remains on account with the Chase Lincoln Bank a balance of $5,145.
Alberta Pearson, one of the executors, acknowledged under oath that she refused to sign the amended account, and when asked if she were presented with a check today to Elijah Curry and the amended account, would she continue to refuse to sign, to which she responded she would. James Taylor, the remaining coexecutor, also under oath testified that he would refuse to sign any amended account, and would refuse to sign any further checks to Elijah Curry in this matter.
Although Mr. Edward Taylor, the recipient of the automobile, did not take the stand, his attorney argues that although they are not questioning the validity of the court’s prior decision (Matter of Curry, supra) they contend that the proper petitioner to proceed against Edward Taylor would be the estate through the fiduciaries, and that any judgment against Edward Taylor should run to the estate and not directly to the surviving spouse. Both executors, however, testify that they will not cooperate in any way in pursuing Edward Taylor for his contribution to the elective share of the surviving spouse.
Rather than proceeding by contempt, the petitioner seeks the removal of the fiduciaries and the appointment of the *647 County Commissioner of Finance in order to expeditiously complete the administration of this estate pursuant to the order of the court. The court deems the relief requested appropriate under the circumstances (see, SCPA 711 [3]). Both fiduciaries have willfully disobeyed the order of the court and under oath have testified that they will continue to do so. The court cannot countenance willful disregard for its orders, and both fiduciaries are herewith summarily removed, surcharged their full statutory commission, and their letters revoked. The attorney for the estate is directed to turn over the files and funds remaining in the estate to the Commissioner of Finance of Broome County who is hereby appointed administrator c. t. a. in this estate upon the filing of his oath, designation and bond. Upon his qualifying pursuant to law, the administrator is directed to carry out the directions of this court pursuant to its order dated April 17, 1989, as modified by this decision and order.
Turning to the question of Edward Taylor’s refusal to contribute to the surviving spouse’s elective share, the court disagrees with the contention of Mr. Taylor’s counsel that any judgment entered should run to the benefit of the estate rather than the benefit of Elijah Curry, the surviving spouse. Although research indicates that there are no New York cases directly on point to the instant case, in Matter of Taliento (9 Misc 2d 167, 168) the court states "[tjhe widow’s interest cuts across the entire estate, subjecting each testamentary gift pro tanto to her statutory lien which is to be satisfied' from the subject matter of the several gifts or by exoneration of their respective donees”. Surrogate Wingate in Matter of Wishart (149 Misc 343, 346) in discussing the effect of the right of election on properties specifically bequeathed by the will states "he [referring to the surviving spouse] is in effect vested with a secondary lien upon the assets specifically bequeathed, inferior in position to the lien herein before considered which is imposed for the solution of debts and estate charges.” A more important guidepost and closer to the point in question before the court is the decision of Surrogate Sobel in Matter of Handler (82 Misc 2d 482). In that case, the remainderman of a testamentary trust, of which the surviving spouse was income beneficiary, sought the rateable contribution from testamentary substitutes be returned to the estate and included in the trust to make up the surviving spouse’s elective share. In rejecting this contention, Surrogate Sobel points out (supra, at 488) that paragraph (A) of EPTL 5-1.1 (c) (1) provides that the *648 testamentary substitutes are part of the decedent’s estate "only 'for the purposes of [that] paragraph’ ”, and are to be utilized solely for computing the amount and determining the effect of the widow’s election, not for the purpose of changing the provisions of the testator’s will. Additionally, Surrogate Sobel aptly observes that the five inter vivas transactions that are designated as testamentary substitutes under subdivision (b) of EPTL 5-1.1 are creatures of statute and prior to its enactment, the surviving spouse had no right to attack such inter vivas transfers unless they were found to be illusory. A finding that a nontestamentary transfer was illusory, of course, would result in the asset coming back into the estate to, not only augment the surviving spouse’s share, but additionally the shares of the other beneficiaries. The Bennett Commission (Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates; see, Third Report, 1964 NY Legis Doc No. 19, at 117-233) rejected this common-law "illusory” test and targeted the five types of transactions, irrespective of whether or not the decedent retained any control or indicia of ownership. Thusly, Surrogate Sobel concludes "When the right of election is exercised against 'testamentary substitutes’ the fund does not become an estate asset over which the executor exercises administrative responsibility. It is returned to the surviving spouse to augment the elective share and only as directed in the statute” (supra, 82 Misc 2d, at 489).
Therefore, in the case before this court, judgment is hereby granted to the surviving spouse, Elijah Curry, against Edward Taylor for Edward Taylor’s pro rata contribution to the surviving spouse’s elective share as finally determined in the decree of final judicial settlement in this estate plus interest at 9% from the date of such decree to date of payment.
As a guideline in determining the amount of the judgment, the parties are referred to Surrogate Sobel’s decision in Matter of Schlosser (73 Misc 2d 380) and particularly this court’s directions in the earlier decision in this case reported in 143 Misc 2d 252 (supra). The gross testamentary estate in this case, after the setoff, per EPTL 5-3.1 (a) (5) is $11,373.05. Adding the agreed value of the automobile which was the subject of the causa mortis gift of $7,800, the total testamentary estate plus testamentary substitutes totals $19,173.05. Since Edward Taylor received the automobile, he received 40.682% of the aggregate amount of the estate plus testamen *649 tory substitutes and that is his percent of contribution to the elective share when it is finally determined. The parties are reminded that continuing administration expenses in this estate not only reduces the testamentary estate but also the elective share.