OPINION OF THE COURT
Renee R. Roth, S.
Incident to its final accounting, the corporate executor of *472 the estate of Ralph J. Schwarz asks the court to determine whether testator’s widow is entitled to interest on the delayed payment of almost half of her preresiduary legacy of $1,500,000. The delay was apparently reasonable because outstanding tax claims against the estate could have required abatement of the legacy. The fiduciary also seeks direction as to whether other legatees are entitled to interest on various small cash bequests.
Mr. Schwarz died on September 27, 1987. Under his will, he disposed of his estate, valued at about $6,000,000, as follows: a cooperative apartment and $1,500,000 to his wife (the legacy in question); cash bequests totalling $50,000 to 18 other legatees; a trust of $1,300,000 for his daughter; and the residue in separate trusts for his son, grandchildren and secretary.
Preliminary letters testamentary issued to Chase Manhattan Bank in October 1987 and permanent letters issued on January 27, 1988.
The executor paid 60% of each outright pecuniary bequest in May 1988, before the expiration of seven months from the issuance of preliminary letters. A receipt and release was executed by each legatee, including Mrs. Schwarz, acknowledging receipt of the partial payment and discharging the executor "of and from any and all claims”.
The executor later satisfied each legacy in full. The balance of Mrs. Schwarz’ bequest was paid in April 1989, by transfer to her custody account, without a receipt and release. The other legatees were not paid in full until November 1990; however, each of them executed a second receipt and release acknowledging full satisfaction of his or her bequest.
A receipt and release for a legacy disposes of the question of interest on the legacy (Matter of Mersdorff, NYLJ, May 5, 1992, at 23, col 2). Therefore, all the legatees except Mrs. Schwarz are precluded from claiming interest by reason of the releases they executed.
The question of Mrs. Schwarz’ right to interest on her delayed payment, on the other hand, is much more troublesome. Many fiduciaries apparently do pay interest in such circumstances but others do not because the law is unclear. Our analysis begins with subdivision (d) of EPTL 11-2.1, which deals with "[ijncome earned during administration of a decedent’s estate”, that is, income realized by estate assets during the period from date of death to date of distribution. Paragraph (2) of this section provides that, absent a direction in *473 the will to the contrary, specific legatees are entitled to the income from the property bequeathed to them and the balance of the income is shared pro rata by "all other beneficiaries, except beneficiaries of pecuniary dispositions not in trust” (emphasis added). In other words, a cash bequest like the one at issue here is the only kind of disposition not expressly entitled to a portion of the income earned during administration.
There would appear to be two possible reasons for not allowing interest on such a legacy. The first is the presumed intent of the testator. An individual making a cash bequest probably intends that the legatee receive the amount specified and no additional income. But this intention is most likely based on an expectation of prompt payment. If payment is delayed, some participation in earnings would presumably be consistent with the testator’s intent.
The second reason is administrative convenience. Many cash bequests are small and paid promptly. For such bequests, the amount of income at stake is negligible and justifiably ignored for the sake of efficiency. Clearly, this rationale fails where, as here, the bequest is substantial and payment is delayed. The longer the delay, the greater the potential damage to the pecuniary legatee because the income attributable to the bequest would accrue to other beneficiaries. The hardship to the pecuniary legatee would thus be a windfall for those beneficiaries. Therefore, in such circumstances, it would seem that equity dictates that the pecuniary legatee receive some compensation. Indeed, in 1971, the Court of Appeals upheld an allowance of such compensation by the Appellate Division to an outright legatee of $20,000 when payment was delayed until more than three years after decedent’s death (Matter of Crea, 27 NY2d 339, affg in part 33 AD2d 887). The Appellate Division had awarded interest at the annual rate of 3% starting seven months after letters testamentary were issued. Surrogate Regan of Erie County (in an unreported decision) had denied such compensation on the ground that the legatee, as coexecutor, was partially responsible for the delay.
Although the Estates, Powers and Trusts Law did not become effective until September 1, 1967, the statutes that were in effect when Crea (supra) was decided are substantially the same as those which govern here. But it is observed that in none of the three Crea decisions was any mention made of Personal Property Law § 27-d, the predecessor to EPTL 11-2.1 *474 (d). Instead, the Appellate Division cited section 218 of the Surrogate’s Court Act (entitled "Payment of legacies”), later incorporated into EPTL 11-1.5. The court, without further discussion, stated: "The fact that appellant as coexecutrix participated in administrative decisions with respect to the assets of the estate which cpntributed to the delay in paying her $20,000 legacy, does not affect her right to interest on the legacy from seven months after letters testamentary were issued” (emphasis added). (Supra, at 887.) The Court of Appeals specifically mentioned and affirmed the above-quoted part of the decision, also citing Surrogate’s Court Act § 218 without discussion (27 NY2d 339, 344).
Despite its invocation by the Appellate Division and the Court of Appeals, Surrogate’s Court Act § 218 did not appear on its face to mandate that a beneficiary receive interest whenever payment of a legacy was delayed. Rather, it provided that interest could be paid if the fiduciary was sued for failure to pay the bequest. Such statute provided in relevant part as follows: "In any action or proceeding to compel payment of a legacy the interest thereon, if any is found to be payable, shall be at the rate fixed by the will or, if no rate is so fixed, at the rate of three per centum per annum unless the delay in payment was unreasonable, in which event interest shall be at the legal rate for the period of such unreasonable delay” (emphasis added). In Crea (supra), no proceeding was brought to compel the fiduciary to pay the legacy; in fact, the legatee was herself a cofiduciary and partially responsible for the delay. Thus, no award of interest was authorized under Surrogate’s Court Act § 218. Furthermore, the statute did not mandate the payment of interest under any circumstance; it merely specified the rate of interest "if any is found to be payable”.
Likewise, EPTL 11-1.5 specifies the rate of interest (now 6%) that may be awarded if the fiduciary is sued. In this respect, the language of the statute is quite similar to that of Surrogate’s Court Act § 218. Section (d) of EPTL 11-1.5 provides that: "In any action or proceeding to compel payment of a disposition or distributive share, the interest thereon, if any, shall, in the case of a disposition, be at the rate fixed in the will or, if none is so fixed, in any case at the rate of six percent per annum commencing seven months from the time letters, including preliminary or temporary letters, are granted.”
Since EPTL 11-1.5 is derived from Surrogate’s Court Act *475 § 218 and is substantially the same, Crea (supra) seems to be controlling (but see, Matter of LaFave, 116 Misc 2d 918).
Clearly, by limiting participation in earnings to those legatees who sue their fiduciaries, unnecessary litigation would be encouraged and beneficiaries who are troublesome and uncooperative would be rewarded. Such beneficiaries would have an incentive to institute a proceeding to compel payment immediately after the expiration of the seven-month period. Meanwhile, a beneficiary who patiently awaited distribution would be denied any share of income. Such a construction of the law makes no sense.
Furthermore, it is observed that the language of EPTL 11-1.5 does not specifically preclude the payment or an award of interest other than in a proceeding to compel payment. If it did, then a fiduciary who paid interest on a legacy at the specific request of the legatee would arguably be subject to surcharge by the residuary legatees for not requiring the legatee to sue the estate. Such a construction of the law also makes no sense.
In the present case, Mrs. Schwarz did not bring a proceeding to compel the executor to pay her legacy despite the fact that a substantial portion, viz., 40% or $600,000, was not paid until 18 months after issuance of preliminary letters. The widow was deprived of the use of her money for over a year. She is at least entitled to be compensated for this delay.
Based upon the foregoing, the executor is directed to pay interest on the 40% of Mrs. Schwarz’ legacy which remained unpaid for almost a year, at the statutory rate of 6% per annum for the period from May 16, 1988 (seven months after issuance of preliminary letters) to April 4, 1989 (the date of payment).
Having reached this conclusion, the court nevertheless feels compelled to add that the 6% rate of interest fixed by EPTL 11-1.5 (d) is excessively high in today’s economic climate. In 1985, when the statute was amended to raise the rate from 3%, 6% was a modest return.
The legislative history of the amendment is illuminating. In his Amended Memorandum to the Governor, the Attorney-General stated (see, Mem of Atty-Gen, L 1985, ch 634, 1985 NY Legis Ann, at 233-234): "[T]he three percent rate is clearly too low for the present time, when interest rates of nearly ten percent are not uncommon * * * The proposed figure of six percent in the case of a reasonable delay in payment of a *476 legacy is appropriate because that amount is a minimum reasonable rate of return for estate assets prudently invested * * * the proposed changes are intended to encourage prompt payment of outright pecuniary dispositions and to prevent the imposition of undue hardship on beneficiaries of such dispositions.”
This court views any fixed numerical rate as insufficiently flexible to be fair over time. It would be more equitable to allow a pecuniary legatee a pro rata share of net income actually earned during the period of the delay in payment. To this end, it is urged that the Legislature reconsider EPTL 11-2.1 (d). A copy of this decision will be forwarded to the EPTL-SCPA Advisory Committee.
Submit decree settling account accordingly.