OPINION OF THE COURT
John B. Riordan, S.
This is the first and final account of the proceedings of Rose Kasenetz, Iver Kasenetz, Jerrold Kasenetz, and John Del Rosso, as preliminary executors and as executors of the will of *319 William Kasenetz. All the interested parties consented to the account except the two coguardians ad litem who were appointed to represent infant grandchildren of the decedent. They are contingent remainder beneficiaries of a testamentary trust established for the income benefit of their father, who is a son of the decedent. The guardians filed a detailed interim report that chronicled their concerns. After extensive negotiations, disclosure and document review, the guardians were able to render a final report recommending the account’s approval, as amended by the executors, with one exception. The guardians still objected to the executors’ payment of Rose Kasenetz’s elective share that included an amount for interest. The guardians argue that the surviving spouse’s elective share is a pecuniary amount that is not entitled to share in the income of the estate, even if it is denominated as interest on a late distribution. For the reasons that follow, the court declines to accept the guardians’ recommendation and will approve the fiduciaries’ account as supplemented.
William Kasenetz died on March 1, 1995, a resident of Nassau County. His will was admitted to probate after preliminary letters were issued to John Del Rosso, Rose Kasenetz, Iver Kasenetz, and Jerrold Kasenetz. Mr. Kasenetz was survived by his spouse, Rose Kasenetz (one of the coexecutors). By order of this court, dated February 14, 1996, John Del Rosso was given leave to resign as executor and Rose Kasenetz, Iver Kasenetz, and Jerrold Kasenetz continued to act as executors. Although not a petitioner in this proceeding, Mr. Del Rosso filed an affidavit adopting the account, which includes the term during which he served.
The decedent is also survived by his five adult children (two of whom, Iver Kasenetz and Jerrold Kasenetz, are also coexecutors). The widow, by an instrument dated May 2, 1995, elected to take her statutory share of the estate. Schedule K of the account reflects the petitioner’s calculation of the elective share. It shows at schedule K (E) an elective share amount of $7,790,686.09. The schedule E distributions to the widow reflect that $7,243,448.30 of that amount has been paid to Mrs. Kasenetz, leaving an amount due her of $547,237.79. Schedule E-l of the account is designed to relate all distributions of income. At schedule E-l of this account, Rose Kasenetz is shown to have received $1,137,824.33 as distributions from income. The petitioners’ claim that these distributions represent their decision to pay Mrs. Kasenetz six percent interest on her elective share. This decision was based on their inability to *320 distribute the elective share to the widow soon after the expiration of the seven-month period from the issuance of letters because of the extent and complexity of the estate. The petitioners claim that Mrs. Kasenetz is owed an additional $9,539.61 interest on the elective share. There is no dispute as to the timing or calculation of the amount of interest. The issue is purely a question of law as to whether the pecuniary amount that represents the elective share partakes in the income earned by the estate during administration (EPTL 11-2.1 [d] [2]) or whether it earns interest at a rate of six percent or nine percent from the date seven months after the issuance of letters (EPTL 11-1.5 [d], [e]) or whether it is entitled to neither. This last position is the recommendation of the guardians ad litem.
The court cannot accept the guardians’ position that the elective share is frozen upon its calculation. After all, until it is finally distributed to the surviving spouse it continues to reside in the estate account, presumably as a productive asset. Therefore, the delay in distribution inures to the benefit of the residuary beneficiaries and the loss of use of the money inures to the detriment of the spouse. There is neither equity in this position nor is there incentive for the fiduciaries to distribute to the surviving spouse what the law determines to be hers in an expeditious fashion, or his as the case may be. In a slightly different context that will be more relevant below, Surrogate Roth opined in Matter of Schwarz (161 Misc 2d 471, 475 [1994]) “[t]he widow was deprived of the use of her money for over a year. She is at least to be compensated for this delay.” The guardians’ reliance on Matter of Curry (146 Misc 2d 645 [1990]) is misplaced. In Curry, the beneficiary of a testamentary substitute refused to contribute to the elective share. The court ordered him to do so and to pay interest at nine percent from the date of such decree to the date of payment because of the egregious nature of his conduct (EPTL 11-1.5 [e]). The opinion is silent as to the issue now before the court.
The more interesting issue is whether the pecuniary amount is entitled to interest or is entitled to share in the estate’s income. The petitioners chose to pay six percent interest on the elective share, a figure taken from EPTL 11-1.5 (d) governing delayed distributions. The court concurs.
As Professor Turano points out in Practice Commentaries (McKinney’s Cons Laws of NY, Book 17B, EPTL 11-2.1, at 158), distribution of income earned by the decedent’s assets during estate administration is governed by EPTL 11-2.1 (d) (2). Ben *321 eficiaries of specific dispositions get the income earned by those assets (EPTL 11-2.1 [d] [2] [A]), while other beneficiaries share the estate income proportionately, except beneficiaries of outright pecuniary bequests, who are entitled to interest under EPTL 11-1.5. Because the elective share is a pecuniary amount computed at the time of death, it does not participate in increases and decreases to the estate during administration. However, it would be illogical to conclude that the elective share is also barren of interest under EPTL 11-1.5. Such a result would unjustly enrich the estate and diminish the value of the elective share. The cases that have considered analogous situations compel the conclusion that the elective share is entitled to statutory interest (see Estate of Goodman, NYLJ, May 19, 2000, at 29, col 2 [Sur Ct, NY County, Preminger, JJ; Matter of Schwarz, 161 Misc 2d 471 [1994]). To rule otherwise would result in unfairness to the spouse and a disincentive to fiduciaries in administering the estate in an expeditious manner.
The allowance of interest on an outright bequest and, by extension, on the pecuniary amount representing the elective share, is, therefore, authorized in the statute. Although one court has held that it will not entertain an application for the payment of interest unless there has been a proceeding to compel payment of the legacy (see Matter of LaFave, 116 Misc 2d 918 [1982]), this court has specifically held that “in the absence of a proceeding to compel payment, interest may be imposed in the discretion of the court” (Estate of Park-Montgomery, NYLJ, May 19, 1997, at 33, col 4; see also Estate of Dickman, NYLJ, Aug. 8, 2000, at 28, col 3). Therefore, the court accepts the fiduciaries’ payment of interest to the surviving spouse.
The account is approved as filed and supplemented. The guardians ad litem are directed to serve and file their affidavits of service which will be submitted for decision. The coexecutors may settle a decree, and the fee will be added to it.